UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVENS & COMPANY, LLC, *doing business as* THE CHEF AGENCY,
Plaintiff,

-v-

JIAQI TANG, *et al.*,
Defendants.

23-CV-1835 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Stevens & Company, LLC, doing business as The Chef Agency ("TCA"), brings this action against Defendants Nicole Miller ("Miller") and Jiaqi Tang ("Tang"). TCA alleges that Miller and Tang operated a competing business in violation of agreements that they had signed with TCA, and TCA asserts claims of breach of contract and tortious interference with business. For her part, Miller brings counterclaims against TCA asserting breach of contract and unlawful retaliation in violation of New York Labor Law.

Before the Court is TCA's motion to dismiss Miller's counterclaims. For the reasons that follow, the Court denies TCA's motion.

## I. Background

### A. Factual Background

The following facts are drawn from the allegations in Miller's counterclaims (ECF No. 23), which are presumed true for the purposes of resolving TCA's motion to dismiss.

From October 2021 through December 2022, TCA, a staffing and recruiting company in the hospitality industry, engaged Miller pursuant to an agreement. (*Id.* ¶¶ 6, 10.) Under the terms of the agreement, Miller, a California resident and hospitality professional who has experience in staffing and recruiting, was to fill employment or staffing openings in various

culinary-related positions. (*Id.* ¶¶ 3-4, 14.) Miller was told that she was a contracted worker, but she was treated and worked as an employee of TCA. (*Id.* ¶ 13.) Miller's primary duties were to source, screen, place, and manage candidates for various entities in the food and beverage industry. (*Id.* ¶ 14.) She was also responsible for management of TCA employees, business development, and contract negotiation. (*Id.*) Under the agreement, Miller would be paid 50% of the Gross Placement Fee for each placement she generated or made for TCA. (*Id.* ¶ 15.)

On December 13, 2022, Miller received a letter from TCA indicating that she was "terminated, effective immediately," in part due to her "formation of a Competitive Service." (*Id.* ¶ 17.) Prior to and after her termination, Miller made multiple requests to TCA for payment of her outstanding unpaid commissions, but TCA ignored or denied each request. (*Id.* ¶ 18.) For example, on December 1, 2022, Miller asked the Vice President of Finance about her outstanding commissions, and Miller received an angry response and was forbidden from contacting her preexisting clients about the status of payments. (*Id.* ¶ 21.) On December 15, 2022, Miller again inquired about her outstanding commissions, and TCA's Chief Development Officer told her that she should never ask about the payments or contact her own clients. (*Id.* ¶ 22.) And on January 13, 2023, after she was terminated, Miller again provided TCA with information about her outstanding commissions, but she did not receive anything. (*Id.* ¶ 19.)

TCA representatives, including Steven Kamali, the chief executive officer and sole owner of TCA, told Miller that she would not be paid any outstanding commissions or wages because she was involved in a business venture in California, called Perfect Hire. (*Id.* ¶¶ 7-8, 20.) Kamali also indicated that he would sue Miller for violation of the non-compete provision, and he prohibited Miller from contacting her own clients or seeking compensation for her placements. (*Id.*)

At the time Miller filed her counterclaims, TCA owed her at least $154,995 in unpaid commissions for twenty-three placements she made. (*Id.* ¶¶ 16, 35-37.) That figure is in addition to compensation owed to Miller for unpaid time spent providing management and consulting-related services to TCA and its employees. (*Id.* ¶ 16.)

### B. Procedural History

On December 21, 2022, TCA commenced an action against Miller and Tang in the Supreme Court, County of New York. (*See* ECF No. 1 ¶ 1.) On March 2, 2023, the action was removed to this Court. (*Id.*) TCA subsequently filed its complaint on April 10, 2023. (ECF No. 11.) Miller filed an answer on June 13, 2023, which includes counterclaims against TCA asserting retaliation in violation of New York Labor Law ("NYLL") and breach of contract. (*See* ECF No. 23 ¶¶ 28-39.) Tang also filed an answer and a counterclaim (*see* ECF Nos. 17, 32), but the parties subsequently reported that TCA and Tang reached a settlement (ECF No. 50).

On June 28, 2023, TCA filed a motion to dismiss, or, in the alternative, stay Miller's counterclaims. (ECF No. 24.) Miller filed an opposition to that motion on July 12, 2023 (ECF No. 30), and TCA filed a reply in support of its motion on July 13, 2023 (ECF No. 31). Miller and TCA also submitted subsequent letters in October 2023 addressing the status of allegedly related proceedings in California. (ECF Nos. 42, 43.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to

relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"A motion to dismiss a counterclaim for failure to state a claim is evaluated using the same standard as a motion to dismiss a complaint." *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015). In evaluating a motion to dismiss a counterclaim, "a court must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party." *Phx. Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).

## III. Discussion

Before the Court is a motion to dismiss two counterclaims brought by Miller against TCA: one asserting retaliation under NYLL Section 215, and one for breach of contract. Because Miller alleges sufficient facts to support her counterclaims, the Court denies TCA's motion to dismiss.

### A. Retaliation Under NYLL

Section 215 of the NYLL provides: "No employer or his or her agent . . . shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . . ." N.Y. Lab. Law § 215(1). To establish a *prima facie* case of retaliation under the NYLL, a plaintiff must show "(1) participation in protected activity

known to the defendant . . . (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 130 (S.D.N.Y. 2020) (quoting *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).

TCA moves to dismiss Miller's retaliation counterclaim solely on the ground that Miller does not sufficiently allege the first required element of a retaliation claim under NYLL, participation in a protected activity. Specifically, TCA contends that Miller's allegations show only that she asked for payment of her outstanding commissions, and that mere inquiries about one's payment do not constitute protected activity. (ECF No. 25 at 11-12.)

The Court disagrees and concludes that Miller's allegations are sufficient to support a claim of retaliation under NYLL Section 215. "[T]o satisfy the first prong of the test for a *prima facie* claim of retaliation, 'a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). "An 'employee need not invoke the Act by name,' and 'oral complaints made to an employer' will suffice, but the employee must 'make[] the assertion of rights plain.'" *Benzinger*, 447 F. Supp. 3d at 130 (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015)). The NYLL's "anti-retaliation provision unquestionably protects informal complaints made to an employer." *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

Here, Miller alleges sufficient facts to support the inference that she asserted to her employer the right to be paid her commissions as required by law. Miller alleges that she "made

several complaints and demands to TCA for the unpaid commissions to which she was entitled," but that "each request was denied or ignored." (ECF No. 23 ¶¶ 18, 29.) Miller also represents that she "reasonably believed" that TCA's failures to make those payments "constituted violations of the law by TCA." (*Id.* ¶ 29.) Although TCA contends that merely asking about how wages are calculated does not constitute protected activity, Miller's activity went further, as she "provid[ed] a breakdown of the overdue payments owed to her" and specifically demanded payment of those commissions. (*Id.* ¶ 22.) Construed in the light most favorable to her, Miller's requests appear to constitute an informal complaint that she was not being paid as required by law. *See, e.g.*, *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 355 (S.D.N.Y. 2014) (concluding that plaintiff's allegations that "he returned three bounced checks to Defendant and requested to be paid by certified check" established protected activity); *Benzinger*, 447 F. Supp. 3d at 131 (plaintiff established prima facie case of retaliation when alleged protected activity "went beyond abstract grumblings or amorphous expressions of discontent related to wages and hours" (internal quotation marks and citation omitted)).

Miller also sufficiently alleges the second and third elements of a retaliation claim. The adverse employment action requirement, which "is met if the conduct complained of might have dissuaded a reasonable worker from making or supporting similar charges," has routinely been held to "encompass[] a broad range of retaliatory acts, including those not traditionally implicated in an employer-employee relationship." *Alvarado v. GC Dealer Servs. Inc.*, 511 F. Supp. 3d 321, 359 (E.D.N.Y. 2021) (internal quotation marks and citations omitted). Here, Miller alleges that after she demanded payment, TCA engaged in threatening and intimidating retaliatory conduct, including the initiation of this lawsuit against her. (ECF No. 23 ¶¶ 20-23, 30.) Moreover, a short period of time passed between Miller's engagement in the protected

activity and the alleged adverse actions (*see id.* ¶¶ 18-23), suggesting a causal connection between the two—the third element of a retaliation claim. *See Esmilla*, 936 F. Supp. 2d at 245 ("In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." (internal quotation marks and citation omitted)). The Court therefore denies TCA's motion to dismiss Miller's retaliation counterclaim.

**B. Breach of Contract**

Miller also sufficiently alleges the elements of a breach of contract claim. Under New York law, the elements of such a claim are: "(1) the existence of an agreement, (2) performance of the contract by the plaintiff, (3) breach of the agreement by the defendant, and (4) damages." *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007). Miller alleges the existence of an agreement with TCA in which Miller was to receive 50% of the Gross Placement Fee for each placement she generated or made for TCA. (ECF No. 23 ¶ 15.) Miller also alleges that TCA breached the agreement by failing to pay her for the twenty-three placements she made for TCA, for which TCA owes her at least $154,995 in unpaid commissions. (*Id.* ¶¶ 16, 37-39.)

TCA asks the Court to dismiss or stay Miller's breach of contract counterclaim because of a parallel action in California state court allegedly asserting the same claim. (ECF No. 25 at 12-13; ECF No. 42.) Miller represents that she has dismissed the California action, however, and TCA provides no evidence to suggest that the action is still ongoing. (*See* ECF No. 43.) The California action therefore provides no basis to dismiss or stay Miller's counterclaim. TCA also briefly cites a claim Miller filed with the California Labor Commissioner's Office as another possible parallel action. (ECF No. 42.) But TCA has not cited any authority to establish that the pendency of an administrative proceeding warrants dismissal of a claim at this early stage of the

litigation. Moreover, a search of the case number TCA provided in a database maintained by California's Department of Industrial Relations suggests that the proceeding TCA refers to, bearing the case number WC-CM-933451 and filed against it in February 2023, has a status of "Closed Dismissed—No Jurisdiction." California Department of Industrial Relations, *Wage Claim Search*, https://perma.cc/4AJ6-PLUJ (last visited Mar. 15, 2024).

## IV. Conclusion

For the foregoing reasons, TCA's motion to dismiss Miller's counterclaims is DENIED.

TCA is directed to file an answer to Miller's counterclaims within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at ECF Number 24.

SO ORDERED.

Dated: March 18, 2024
New York, New York

J. PAUL OETKEN
United States District Judge